WO                                                                                                          SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Alan Kleinfelt,<br><br>           Plaintiff,<br><br>v.<br><br>Correctional Officer III Gilbert, et al.,<br><br>           Defendants. | No.  CV 20-00793-PHX-JAT (JFM)<br><br>**ORDER** |

      Plaintiff Daniel Alan Kleinfelt, who is confined in the Arizona State Prison Complex-Tucson, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983, a deficient Application to Proceed In Forma Pauperis (Doc. 2), a motion to appoint counsel (Doc. 8), and a motion for leave to amend his Complaint (Doc. 11). Plaintiff subsequently filed a First Amended Complaint (Doc. 12). The Court denied the deficient Application to Proceed and Plaintiff's motions and gave him leave to pay the filing and administrative fees or file a new complete Application to Proceed In Forma Pauperis (Doc. 13).

      Plaintiff has filed a new Application to Proceed In Forma Pauperis (Doc. 14) and a motion to reconsider the denial of appointment of counsel (Doc. 16). The Court will grant the Application, deny the motion, order Defendants Morrison and Vicario to answer Count II of the First Amended Complaint, and dismiss the remaining claims and Defendants without prejudice.

**I.     Application to Proceed In Forma Pauperis and Filing Fee**

      The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28

TERMPSREF

U.S.C. § 1915(a).  Plaintiff must pay the statutory filing fee of $350.00.  28 U.S.C. § 1915(b)(1).  The Court will assess an initial partial filing fee of $17.94.  The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00.  28 U.S.C. § 1915(b)(2).  The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

## II.     Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)-(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**III.   First Amended Complaint**

In his six-count First Amended Complaint, Plaintiff alleges claims for excessive force, threat to safety, and violations of due process and equal protection. Plaintiff sues 35 current or former employees of the Arizona Department of Corrections (ADC), including Director David Shinn and the following Lewis Complex employees: Warden Thompson; Lewis Complex Deputy Wardens (DWs) D. Fajardo and D. Golder; Assistant DWs S. Repp and Holland; Captain Hileman; Lieutenants Wright, Chetty, and Oschieta; Sergeants J. Davis, McFadden, Aguilar, Taylor, and Schultz; Correctional Officer (CO) IV Diane Trepanier; CO IIIs Gilbert, Willis, T. Wade, and Shumerbck; CO IIs J. Morrison, Vicario, M. Morgan, Gonzalez, Ganzalez, Files, Rheinschmidt, Patino, Villegros, Shldance, Floriz, Martenez, and Badge 3185 (hereafter "Doe 3185"). Plaintiff also sues an unknown ADC Divisional Director (hereafter "Doe Divisional Director"). Plaintiff seeks injunctive relief in the form of restoration of early release credits, among other injunctive relief; and compensatory and punitive relief.

Plaintiff designates **Count I** as a claim for denial of due process in connection with disciplinary proceedings. Plaintiff alleges the following facts:

On March 30, 2020, Defendant Captain Hileman denied Plaintiff's written request for witnesses to appear at Plaintiff's disciplinary hearing. Hileman also denied Plaintiff's request for staff assistance. Plaintiff asserts that he was thereby denied access to the courts. Plaintiff was held in segregation "the whole time during Disciplinary." (Doc. 12 at 16.) Plaintiff contends that prison staff falsified the disciplinary report, and his disciplinary appeal was subsequently denied.

On April 28, 2020, Captain Hileman presided over another disciplinary hearing for

**TERMPSREF**

three disciplinary violations. Plaintiff claims that the disciplinary reports were fabricated and retaliatory. Plaintiff asked Hileman if he had to convince Hileman that he was not guilty. Hileman responded yes. Plaintiff contends that Hileman was biased against him. Hileman refused to interview a witness. Defendants CO III Wade and CO II Gilbert were not authorized to sit in on the hearing but did so anyway. Plaintiff's request for staff witnesses was denied and he was denied staff assistance to which he was entitled as a prisoner placed in segregation before a disciplinary hearing under prison rules. Without staff assistance, Plaintiff was unable to demonstrate his innocence. Plaintiff claims that by being denied a "proper disciplinary proceeding," his due process rights were violated.

Plaintiff designates **Count II** as a claim for excessive force. In Count II, Plaintiff alleges the following facts:

On March 29, 2020 in the Bachman Detention Unit, Plaintiff asked Defendants Morrison and Vicario to sign off on an emergency grievance. Both refused, and thereby, according to Plaintiff, denied him access to the grievance process. Plaintiff told both Defendants that he was having chest pains and asked them to activate an ICS. They disregarded his request and walked away. When they subsequently returned, Vicario told Plaintiff to pack up his property because he was "leaving." Plaintiff told both officers that he was having trouble breathing but started packing up his property. Morrison told Plaintiff to hurry up. Plaintiff again told them that he was having trouble breathing and that he was going as fast as he could. Vicario then said, "spray him." Plaintiff asked Defendants Morrison and Vicario not to spray him because he was having trouble breathing. Nevertheless, Morrison deployed a chemical agent into Plaintiff's cell as other unidentified "Defendants" watched. Plaintiff alleges the whole incident occurred in 45 seconds.

Plaintiff designates **Count III** as a claim for threat to safety. In Count III, Plaintiff alleges that Morrison's deployment of the chemical agent into an enclosed space, i.e., his cell, as alleged in Count II, posed a threat to his safety. Plaintiff contends the officers failed to take steps to defuse the situation short of deploying the chemical agent. Plaintiff also contends that his conditions of confinement posed a threat to his safety that put his health

in jeopardy. Plaintiff alleges the he notified "Defendants" of the conditions. He also alleges a threat to his mental health from prolonged detention in segregation during which he was provided no programming or recreation time. He also alleges that he was denied the proper forms to communicate outside the confines of the Bachman Detention Unit, which he claims threatened his safety.

Plaintiff designates **Count IV** as a claim for denial of access to the courts. Plaintiff alleges the following:

During Plaintiff's detention in segregation in the Bachman Detention Unit, Defendants Gilbert and Trepanier denied Plaintiff access to his "PCR advocate" on numerous occasions. Plaintiff's attorney has correspondence from Plaintiff voicing those concerns. Plaintiff's PCR case has twice been "extended" due to denial of access to the court.

"Defendants" refused Plaintiff unspecified documents necessary to communicate with the Administration about his conditions of confinement and institutional life. "Defendants" also denied Plaintiff access to the grievance process, "a 'species' of court access." Plaintiff further contends that "Defendants" denied him access to a law library and legal assistance as "core requirements" of access to the courts, which delayed his possible release from prison. Plaintiff claims that "Defendants inabled [sic] Plaintiff to do a good job on Plaintiff's legal work."

Plaintiff designates **Count V** as a claim for retaliation. He alleges that "Defendants" prolonged his detention in segregation and brought frivolous and false disciplinary charges against him in retaliation for Plaintiff filing grievances, making complaints, and pursuing lawsuits.

Plaintiff identifies **Count VI** as a claim for unjustified prolonged detention in segregation. Plaintiff alleges the following facts:

On December 17, 2019, Plaintiff was placed in segregation on a 2A investigation. Department Orders give prison officials 30 days to conclude 2A investigations. Plaintiff continued to be detained in segregation for longer than 30 days, and he advised

TERMPSREF

"Defendants" via inmate letters, informal complaint resolutions, formal grievances, and grievance appeals that his detention for more than 30 days was unjustified. Plaintiff was informed on several occasions that the 2A investigation was completed on February 13, 2020. "Defendants" refused to remove Plaintiff from segregation, put his safety and well-being in danger, denied him access to the court, retaliated against him by using excessive force, and prolonged his segregation. After Plaintiff was issued a disciplinary charge on April 28, 2020, Plaintiff's correctional score or classification dramatically increased, "due to sudden findings of guilt." On May 4, 2020, Plaintiff was transported to the Tucson Complex with a closed custody status. Thus, Plaintiff went from a 2/2 risk score to a 4/3 risk score. Plaintiff spent 138 days in segregation.

**IV.     Failure to State a Claim**

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

**A.     Count I**

In Count I, Plaintiff asserts that he was denied due process in connection with disciplinary proceedings. In analyzing a due process claim, the Court must first decide whether Plaintiff was entitled to any process, and if so, whether he was denied any constitutionally required procedural safeguard. Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472,

484 (1995) (internal citations omitted).[1]

To determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 486). "Atypicality" requires not merely an empirical comparison but turns on the importance of the right taken away from the prisoner. *See Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997). To determine whether the sanctions are atypical and a significant hardship, courts look to prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996).

Plaintiff indicates that he was held in segregation for 138 days, where he was subject to unconstitutional conditions of confinement, and implies that he lost earned release credits. Plaintiff fails to specifically allege what sanctions were imposed for each of the disciplinary offenses of which he was found guilty. Plaintiff also fails to allege *facts* to support that his conditions of confinement while in disciplinary segregation rose to a level of unconstitutionality. For these reasons, Plaintiff fails to sufficiently allege facts to

---

[1] In addition to alleging an atypical and significant hardship in relationship to the ordinary incidents of incarceration, a plaintiff must also specify the due process safeguard he was denied and by whom. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Procedural due process safeguards in a prison disciplinary hearing require that the defendant receive: (1) written notice of the charges, no less than twenty-four hours prior to the hearing; (2) a written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary action and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the defendant to do so. *Id.* at 565-66. In addition, due process requires that there be "some evidence" to support the official's decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). However, this "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion." *Id.* at 455-56 (emphasis added).

support that he was subject to atypical and significant hardships that implicated due process. *See Sandin*, 515 U.S. at 475-76, 487 (30 days' disciplinary segregation is not atypical and significant); *Smith v. Mensinger*, 293 F.3d 641, 654 (3rd Cir. 2002) (seven months of disciplinary confinement "does not, on its own, violate a protected liberty interest"); *Jones v. Baker*, 155 F.3d 810 (6th Cir. 1998) (two and one-half years' administrative segregation is not atypical and significant); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating a prisoner's due process rights); *Lucero v. Russell*, 741 F.2d 1129 (9th Cir. 1984) (administrative transfer to maximum security without a hearing does not infringe on any protected liberty interest). Accordingly, Count I will be dismissed for failure to state a claim.

### B.   Count II

In Count II, Plaintiff alleges that Defendants Morrison and Vicario used excessive force against him by deploying a chemical agent without attempting to defuse the situation and after Plaintiff told them that he was suffering chest pain and difficulty breathing. Liberally construed, Plaintiff sufficiently alleges facts to state a claim for excessive force against Morrison and Vicario. Because Plaintiff fails to allege facts to support that any other Defendants were involved, including how, Plaintiff's remaining allegations against unspecified Defendants will be dismissed.

### C.   Count III

Plaintiff designates Count III as a claim for threat to safety. A convicted prisoner's claim for a threat to safety arises under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 and n. 16 (1979). To state a claim for threat to safety or failure to protect, a prisoner must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835.

1    To adequately allege deliberate indifference, a plaintiff must allege facts to support that a
2    defendant knew of, but disregarded, an excessive risk to inmate safety. *Id*. at 837. That is,
3    "the official must both [have been] aware of facts from which the inference could be drawn
4    that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the
5    inference." *Id*. Thus, a plaintiff must allege facts to support when and how any particular
6    defendant knew of a substantial risk of harm to him and that the defendant disregarded or
7    failed to take steps to ensure the plaintiff's safety.

Plaintiff alleges that Defendant Morrison's deployment of the chemical agent into an enclosed space, i.e., Plaintiff's cell, as alleged in Count II, posed a threat to his safety. Plaintiff does not allege facts to support that exposure to the chemical agent posed an excessive risk to him or that he suffered any injury as a result. Plaintiff also fails to allege facts to support that Morrison knew, or should have known, that deploying the chemical agent against Plaintiff posed a *substantial* threat of serious harm to Plaintiff but nevertheless deployed the agent. Accordingly, Plaintiff fails to state a claim for threat to safety against Morrison and Count III will be dismissed.

### D.    Count IV

Plaintiff designates Count IV as a claim for denial of access to the courts. The right of meaningful access to the courts prohibits officials from actively interfering with inmates' attempts to prepare or file legal documents. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). The right of access to the courts is only a right to bring petitions or complaints to federal court and not a right to discover such claims or even to ligate them effectively once filed with a court. *Id.* at 354. The right "guarantees no particular methodology but rather the conferral of a capability–the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id*. at 356.

As a matter of standing, for an access-to-courts claim, a plaintiff must show that he suffered an "actual injury" with respect to contemplated litigation. *Id*. at 349. To show actual injury with respect to contemplated litigation, the plaintiff must demonstrate that the defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous claim

that he wished to present. *Id.* at 352-53. In addition to identifying "a nonfrivolous, arguable underlying claim," the underlying claim "must be described in the complaint." *Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002).

"[T]he injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* at 355. The nonfrivolous claim must be a direct or collateral attack on the inmate's sentence or a challenge to the conditions of his confinement. *Id.* "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original).

Plaintiff alleges that his PCR proceeding, in which he is represented by counsel, has been twice delayed. Plaintiff also alleges that Defendants Gilbert and Trepanier denied him access to his attorney, but he fails to allege when or how. Moreover, Plaintiff acknowledges that he was able to communicate with counsel in correspondence. These allegations do not support that Plaintiff has been denied access to the court or suffered an actual injury.

Plaintiff also generally alleges that unspecified "Defendants" refused to provide Plaintiff unidentified documents necessary to complain about his conditions of confinement and institutional life. That is, Plaintiff asserts that unspecified "Defendants" denied him access to the grievance process.

Prisoners have a First Amendment right to file prison grievances, *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005), but "[t]here is no legitimate claim of entitlement to a grievance procedure," *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), and the failure to follow grievance procedures does not give rise to a due process claim. *See Flournoy v. Fairman*, 897 F. Supp. 350, 354 (N.D. Ill. 1995) (jail grievance procedures did not create a substantive right enforceable under § 1983); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (violations of grievance system procedures do not deprive

**TERMPSREF**

inmates of constitutional rights). "[N]o constitutional right was violated by the defendants' failure, if any, to process all of the grievances [plaintiff] submitted for consideration." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). In addition, "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials. Moreover, the First Amendment's right to redress of grievances is satisfied by the availability of a judicial remedy." *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003); *see also Ashann-Ra v. Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) (failure to comply with state's grievance procedure is not actionable under § 1983 and does not compromise an inmate's right of access to the courts).

Plaintiff fails to sufficiently allege facts to support that any specific Defendant denied him access to the prison grievance system, including when and how. Therefore, to the extent that Plaintiff asserts a violation of the right to petition for redress of grievances, Plaintiff also fails to state a claim. Count IV will be dismissed accordingly.

### E.     Count V

Plaintiff designates Count V as a claim for retaliation. A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

- 11 -

Plaintiff merely alleges that unspecified "Defendants" prolonged his detention in segregation and issued frivolous and false disciplinary charges in retaliation for grievances, complaints, and lawsuits he had filed. These allegations are vague and conclusory. Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pleaded. *Id*. Plaintiff fails to specifically allege when any particular Defendant issued him disciplinary charges as retaliation and facts to support that such alleged retaliation was prompted by Plaintiff's exercise of constitutional rights. Accordingly, Plaintiff fails to state a claim in Count V and it will be dismissed.

### F.     Count VI

Plaintiff identifies Count VI as a claim for unjustified prolonged detention in segregation, alleging that he was placed in segregation pending an investigation and that he continued to be detained in segregation beyond the 30-day time limit contained in a Department Order. The mere failure to comply with prison regulations, absent more, does not rise to the level of a constitutional violation. Plaintiff's allegedly prolonged detention in segregation, absent more, does not rise to the level of a constitutional violation.[2] *See Sandin*, 515 U.S. at 475-76. Accordingly, Count VI will be dismissed for failure to state a claim.

### IV.    Claim for Which an Answer Will be Required

As discussed above, liberally construed, Plaintiff states a claim for excessive force against Defendants Morrison and Vicario in Count II and they will be required to respond to this Count.

---

[2] Furthermore, a prisoner does not have a liberty interest in remaining in a particular institution or unit; he may be transferred for any constitutionally permissible reason or for no reason at all. *Meacham v. Fano*, 427 U.S. 215, 225 (1976); *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995); *Shang v. Zurich*, 681 F.2d 1091, 1100 (7th Cir. 1982); *Rizzo v. Dawson*, 778 F.2d 527, 530-31 (9th Cir. 1985). Similarly, an inmate does not have a constitutional right to a particular classification.

## V.    Motion for Reconsideration

Plaintiff has filed a motion to re-evaluate the denial of his motion to appoint counsel. The Court construes the motion as one for reconsideration.

Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). A motion for reconsideration is appropriate where the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Such motions should not be used for the purpose of asking a court "'to rethink what the court had already thought through – rightly or wrongly.'" *Defenders of Wildlife*, 909 F. Supp. at 1351 (*quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Nor may a motion for reconsideration repeat any argument previously made in support of or in opposition to a motion. *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988).

The Court has reviewed Plaintiff's motion to appoint counsel and his motion to re-evaluate the denial of the appointment of counsel. The Court finds no basis to reconsider its decision. Thus, the Court will deny Plaintiff's motion for reconsideration.

## VI.    Warnings

### A.    Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or

**TERMPSREF**

(2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed In Forma Pauperis (Doc. 14) is **granted**.

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $17.94.

(3) Counts I, III, IV, V, and VI are **dismissed** without prejudice.

(4) All Defendants **except** Morrison and Vicario are **dismissed** without prejudice.

(5) Defendants Morrison and Vicario must answer Count II.

(6) The Clerk of Court must send Plaintiff a service packet including the First

**TERMPSREF**

Amended Complaint (Doc. 12), this Order, and both summons and request for waiver forms for Defendants Morrison and Vicario.

(7) Plaintiff must complete[3] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(9) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(10) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(11) A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(12) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

---

[3] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

**TERMPSREF**

(a) personally serve copies of the Summons, the First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(13) Defendants must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(14) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(15) Plaintiff's motion to reconsider the denial of his motion to appoint counsel (Doc.16) is **denied**.

(16) This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 8th day of September, 2020.

James A. Teilborg
Senior United States District Judge

**TERMPSREF**