WO

KAB

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Daniel Alan Kleinfelt,

Plaintiff,

v.

David Shinn, et al.,

Defendants.

No.   CV 20-00793-PHX-JAT (JFM)

**ORDER**

Plaintiff Daniel Alan Kleinfelt, who is currently confined in Arizona State Prison Complex-San Luis, brought this civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 12.)  Defendants move for summary judgment (Doc. 34), and Plaintiff did not respond.[1]

**I.     Background**

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated excessive force claims against Vicario and Morrison, and dismissed the remaining claims and Defendants.  (Doc. 17.)

Defendants Vicario and Morrison move for summary judgment on the ground that Plaintiff failed to properly exhaust his available administrative remedies.

. . . .

. . . .

. . . .

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response.  (Doc. 39.)

1    **II.**    **Legal Standards**

2       **A.**    **Summary Judgment**

3         A court must grant summary judgment "if the movant shows that there is no genuine
4  dispute as to any material fact and the movant is entitled to judgment as a matter of law."
5  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The
6  movant bears the initial responsibility of presenting the basis for its motion and identifying
7  those portions of the record, together with affidavits, if any, that it believes demonstrate
8  the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

9         If the movant fails to carry its initial burden of production, the nonmovant need not
10  produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099,
11  1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts
12  to the nonmovant to demonstrate the existence of a factual dispute and that the fact in
13  contention is material, i.e., a fact that might affect the outcome of the suit under the
14  governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable
15  jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
16  242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th
17  Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its
18  favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however,
19  it must "come forward with specific facts showing that there is a genuine issue for trial."
20  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal
21  citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

22         At summary judgment, the judge's function is not to weigh the evidence and
23  determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*,
24  477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw
25  all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited
26  materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).
27  . . . .
28  . . . .

**B.     Exhaustion**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

. . . .

. . . .

**III.    Facts**[2]

    **A.    Exhaustion Procedure**

Department Order 802 (DO 802), Inmate Grievance Procedure, (effective Oct. 16, 2016), governs the ADC's inmate grievance procedure.  (Doc. 35 ¶ 8.)  Unless notified of an extension of time frames, expiration of any time limit for a response at any stage in the process shall entitle the inmate grievant to move to the next step in the process.  (*Id.* ¶ 12.)  Extensions at any step shall not exceed 15 workdays.  (*Id.* ¶ 13.)  If an inmate does not receive a response within the time period specified, his/her time to proceed to the next stage is the same as if he/she had received a response. (*Id.* ¶ 14.)  The time to proceed to the next stage begins to run the day after a response was due.  (*Id.* ¶ 15.)  The maximum length of time for completion of the grievance process is 120 days from initiation of the Formal Grievance Process.  (*Id.* ¶ 16.)

An inmate shall attempt to resolve their complaints through informal means, including, but not limited to, discussion with staff in the area most responsible for the complaint of through the submission of an Inmate Informal Complaint Resolution.  (*Id.* ¶ 18.)  In the event the complaint is unable to be resolved informally, the inmate may submit an Informal Complaint on an Inmate Informal Complaint Resolution form to the Correctional Officer (CO) III in their respective unit.  (*Id.* ¶ 19.)  The Informal Complaint must be submitted within 10 workdays from the date of the action that caused the complaint.  (*Id.* ¶ 20.)  The CO III attempts to investigate and resolve the complaint informally, and provides a response within 15 workdays of its receipt.  (*Id.* ¶ 21.)

Inmates may file a Formal Grievance if they are dissatisfied with the Inmate Informal Complaint Response.  (*Id.* ¶ 22.)  If an inmate is unable to resolve a non-medical

---

[2] Because Plaintiff did not file a response or controverting statement of facts, the Court will consider Defendants' facts undisputed unless they are clearly controverted by Plaintiff's first-hand allegations in the verified Complaint or other evidence on the record. Where the nonmovant is a pro se litigant, the Court must consider as evidence in opposition to summary judgment all the nonmovant's contentions set forth in a verified complaint or motion.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

complaint informally, the inmate may submit a Formal Grievance to the unit CO IV Grievance Coordinator within five workdays from the receipt of a response from the CO III.  (*Id.* ¶ 23.)  An inmate must place only a single complaint on a single Inmate Grievance form.  (*Id.* ¶ 24.)  If the inmate includes multiple unrelated issues on a single form or submits a duplicate complaint, the submission of the grievance shall be rejected and returned to the inmate unprocessed.  (*Id.* ¶ 25.)  The inmate shall submit the Inmate Grievance form to the unit CO IV Grievance Coordinator who then logs and assigns a number to the grievance, using the Unit Coordinator Grievance Log.  (*Id.* ¶ 26.)

Within 15 workdays following the receipt of the formal inmate grievance, the Deputy Warden issues a written response to the inmate.  (*Id.* ¶ 27.)  If the inmate receives an unfavorable response from the Deputy Warden, the inmate may appeal the response to the Director within five workdays of receipt of the Formal Inmate Grievance Response from the Deputy Warden.  (*Id.* ¶ 28.)  The inmate submits the Appeal to the CO IV Grievance Coordinator who logs, processes, and forwards all documents to the Central Office Appeals Officer within five workdays of receiving the Inmate Grievance Appeal from the inmate.  (*Id.* ¶ 29.)  An inmate may not file an appeal to the Director until the grievance procedure within the inmate's assigned unit and institution has been exhausted.  (*Id.* ¶ 30.)

Within 30 calendar days, the Central Office Appeals Officer prepares a response and submits it to the Director or Director's designee for signature.  (*Id.* ¶ 31.)  The ADC consider the Director's response to be final and to constitute exhaustion of all remedies.  (*Id.* ¶ 32.)

## B.  Plaintiff's Complaints

Plaintiff's initial Complaint in this action was received by the Clerk of the Court on April 23, 2020 and named Vicario and Morrison as Defendants.  (Doc. 1.)  In that Complaint, Plaintiff relevantly alleged that on March 29, 2020, Defendant Vicario used excessive force on him by deploying pepper spray through a closed door in Plaintiff's cell.  (*Id.* at 4.)  In his Complaint, Plaintiff explained that he had not submitted an administrative

remedy request to the highest level because "I have yet to hear back from administration." (*Id.*)

Plaintiff filed the operative First Amended Complaint on May 24, 2020 and again named Vicario and Morrison as Defendants. (Doc. 12.) In the First Amended Complaint, Plaintiff alleged that on March 29, 2020, Defendant Vicario told Defendant Morrison to spray Plaintiff with pepper spray while Plaintiff was in medical distress. (*Id.* at 17.)

### C.   Plaintiff's Grievances

On March 29, 2020, Plaintiff submitted an Informal Complaint Resolution to the ADC stating that after he requested medical help from Defendants Morrison and Vicario, Defendant Vicario used pepper spray on him. (Doc. 35-3 at 18.) .

On April 14, 2020, prior to the response deadline of 15 workdays for the informal response, Plaintiff submitted an Inmate Grievance appeal incorrectly stating that "It has been 15 workdays since the submission of Informal Complaint Resolution" and stating that he was appealing the initial grievance. (*Id.* at 20.)

On April 21, 2020, CO IV Trepanier issued a Response to Plaintiff's informal grievance. (Doc. 35-3 at 19.)[3]

On April 24, 2020, Plaintiff submitted an Inmate Grievance stating that he was grieving the "deploying of a chemical agent into" his cell on March 29, 2020. (*Id.* at 21.) On April 27, 2020, Plaintiff received a response to the Inmate Grievance indicating that the forms were submitted out of proper sequence and that Plaintiff should have submitted his grievance before the appeal, and the grievance was denied as unprocessed because Plaintiff did not submit the informal complaint and response with his Inmate Grievance. (*Id.* at 21-22.)

On May 22, 2020, Plaintiff submitted an Inmate Grievance Appeal stating that he did not receive a response to his Inmate Grievance submitted on April 24, 2020, which was preventing him from exhausting administrative remedies. (Doc. 35-4 at 10.) On May 24,

---

[3] As noted above, Plaintiff's initial Complaint in this action was received by the Clerk of the Court on April 23, 2020.

2020, Plaintiff received a response that the grievance was returned unprocessed with a copy of the April 27, 2020 response to Plaintiff's April 24, 2020 grievance.  (*Id.* at 10-11.)

Plaintiff filed no other processed or unprocessed grievances.  (Doc. 35 ¶¶ 37, 45, 53.)

**IV.   Discussion**

Defendants argue that Plaintiff failed to properly exhaust his available administrative remedies because he did not exhaust his available administrative remedies prior to filing his Complaint in this action.  Defendants further assert that even if Plaintiff filed his Complaint in this action in a timely fashion, he failed to exhaust his available administrative remedies because although he properly submitted his informal complaint resolution, he did not wait 15 workdays before he submitted an appeal and did not follow the proper appeal sequence because he filed an appeal prior to filing a formal inmate grievance, and when he did submit his formal inmate grievance, he did not attach his informal complaint and response to the grievance as required by the DO 802.

The record before the Court shows that Plaintiff did not properly follow the ADC's procedures for exhaustion and did not exhaust his available administrative remedies.  Even if Plaintiff eventually exhausted his available administrative remedies, this action must be dismissed because Plaintiff filed this lawsuit prior to exhausting his available administrative remedies, and Plaintiff admitted in his Complaint that he had not exhausted his administrative remedies prior to filing his Complaint.  *See* 42 U.S.C. § 1997e(a); *Vaden*, 449 F.3d at 1050 ("The bottom line is that a prisoner must pursue the prison administrative process as the first and primary forum for redress of grievances.  He may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed.  It would be inconsistent with the objectives of [42 U.S.C. § 1997e(a)] to let him submit his complaint any earlier than that.").  Although Plaintiff later filed a First Amended Complaint, because Plaintiff brought the unexhausted claims in his original Complaint, the Amended Complaint could not cure the failure to exhaust prior to filing his original Complaint.  *See Cano v. Taylor*, 739 F. 3d 1214, 1220 (9th Cir. 2014) (holding

that the date of filing an amended complaint can be used in determining whether exhaustion had occurred before filing the claim for claims not pleaded in the initial complaint, but the date of the amended complaint does not apply to unexhausted claims brought in the initial complaint).

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 34).

(2)     Defendants' Motion for Summary Judgment (Doc. 34) is **granted**, and the action is dismissed without prejudice for failure to properly exhaust available administrate remedies.  The Clerk of Court must enter judgment accordingly.

Dated this 12th day of April, 2021.

James A. Teilborg
Senior United States District Judge